# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LONE FONSS SCHRODER,  )   | |
|  ) | |
| Plaintiff,  ) | |
|  ) | Case No. 17 C 6119 |
| v.  ) | |
|  ) | |
| MARK E. TEUFEL,  ) | |
|  ) | |
| Defendant.  ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 13, 2017, Plaintiff Lone Fonss Schroder filed an Amended Complaint for Declaratory Judgment and Permanent Injunction in relation to a pending arbitration proceeding brought by Defendant Mark Teufel. Before the Court is Teufel's motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). In the alternative, Teufel moves to dismiss under Rule 12(b)(7) arguing that Schroder has failed to join a necessary party to this lawsuit. For the following reasons, the Court grants Teufel's motion to dismiss for improper venue under Rule 12(b)(3) and stays this litigation pending arbitration. *See Halim v. Great Gatsby's Auction Gallery, Inc.,* 516 F.3d 557, 561 (7th Cir. 2008) ("the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright."). Accordingly, the Court need not reach Teufel's alternative motion under Rule 12(b)(7), and thus denies this aspect of the present motion as moot.

## LEGAL STANDARD

A motion under Rule 12(b)(3) for improper venue is the appropriate procedure when a litigant seeks to dismiss a lawsuit based on an arbitration agreement. *See Faulkenberg v. CB Tax*

*Franchise Sys., LP,* 637 F.3d 801, 809-10 (7th Cir. 2011). Under Rule 12(b)(3), district courts may consider materials outside the pleadings, such as the parties' arbitration agreement. *See id*.; *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) ("Under Rule 12(b)(3), the district court was not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment"). As the Seventh Circuit instructs, "Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision." *Deb v. SIRVA, Inc.,* 832 F.3d 800, 809 (7th Cir. 2016).

## BACKGROUND

In this lawsuit, Schroder seeks a declaration that the arbitration agreement at issue is defective in its formation, and therefore never existed. Specifically, in her Amended Complaint, Schroder, a citizen of Denmark, alleges that this dispute involves a purported arbitration clause in the parties' joint enterprise agreement ("JEA") between Schroder and Martin Hagedorn on one side and an entity called RFC Capital Partners Holdings, LLC ("RFC") on the other. (R. 9, Am. Compl. ¶ 5.) Schroder further alleges that the JEA described RFC as "a merchant banker having approximately 30 years of experience in acquiring and financing businesses." (*Id*.; R. 9-1, JEA, at 2.) The JEA also states that "RFC maintains co-investment partnerships with leading Private Equity firms[.]" (Am. Compl. ¶ 5; JEA ¶ D.) Defendant Teufel signed the JEA on behalf of RFC as its Managing Partner. (Am. Compl. ¶¶ 5, 12; JEA, at 4.) According to the JEA – RFC, Schroder, and Hagedorn would work together to consummate a transaction involving the acquisition of an equity stake – worth approximately $400 million – in a Danish Bank called Saxo Bank. (Am. Compl. ¶¶ 6, 15.) The terms of the JEA include that the parties agreed to share fees and equity received pursuant to a transaction involving Saxo Bank and any of RFC's

2

co-investment partners. (*Id*. ¶ 6; JEA ¶ 2.) More specifically, RFC would receive 70% of any cash fees and 30% of any equity interests received, whereas Schroder and Hagedorn would receive the remaining 30% cash fees and 70% of any equity interests. (Am. Compl. ¶ 6; JEA ¶ 2.) The arbitration clause at issue reads as follows:

> **Law and Jurisdiction.** This Agreement shall be governed by the laws of the State of Delaware. Any controversies that might arise between the parties shall be settled by binding arbitration held before an arbitrator appointed by the American Arbitration Association in the City of Chicago.

(JEA ¶ 8.)

Further, Schroder alleges that at the time the parties signed the JEA containing the arbitration clause at issue, RFC was not organized as an LLC or corporation under the laws of Illinois. (Am. Compl. ¶ 8.) Schroder thereby contends that because RFC was not organized as an LLC, it lacked the capacity to enter into the JEA that contained the arbitration clause. (*Id*. ¶ 9.) Also, Schroder explains that she has not sued RFC in the present lawsuit because it does not have the capacity to sue or be sued. (*Id*.)

Before Schroder filed this lawsuit, RFC and Teufel sent an arbitration demand to her on July 11, 2017 alleging that she breached her contractual and fiduciary duties owed under the JEA. (*Id*. ¶ 12.) According to the arbitration demand, Schroder secretly worked behind RFC's and Teufel's back to consummate a transaction with a buyer of Saxo Bank's stock without including RFC, Teufel, and Hagedorn in the deal. (*Id*., R. 9-3, Demand, ¶ 2.) On August 3, 2017, an attorney with the AAA sent a confirmation letter to the parties after an administrative conference call with counsel concerning the arbitration proceeding Case Number: 01-17-0004-0752. (R. 15-3, 8/3/17 Letter.) The August 3 letter unequivocally states:

> The parties have confirmed their agreement to have the American Arbitration Association/International Centre for Dispute Resolution (AAA/ICDR) fully administering the procedure under reference and further confirmed that the

3

current AAA's Commercial Arbitration Rules, including their Large Complex Commercial Disputes, shall apply to this matter.

(8/3/17 Letter, at 2.) In her response to the present motion, Schroder admits that, "[n]o later than August 3, 2017, counsel to Plaintiff agreed with counsel to Defendant that the American Arbitration Association's ("AAA") Commercial Arbitration Rules, including the rules pertaining to Large Complex Commercial disputes, would apply[.]" (R. 18, Pl.'s Resp., at 3-4.) The August 3 letter also set certain deadlines for the arbitration proceeding, including a deadline of August 17, 2017 to select a sole arbitrator and a September 7, 2017 deadline for Schroder to file an Answering Statement. (8/3/17 Letter, at 2.)

On September 7, 2017, Schroder filed her Answer in the pending arbitration seeking to stay the arbitration proceedings until the resolution of this federal lawsuit. (R. 15-5, Answer.) There is no indication from the record whether the agreed-upon Arbitrator, former U.S. District Court Judge Wayne Andersen, has granted Schroder's motion to stay. According to Teufel, on September 29, 2017, RFC and he filed a motion for leave to amend the Arbitration Demand to add Hagedorn as a party to the arbitration, which is also pending before Judge Andersen.

## ANALYSIS

In the present motion, Teufel contends that by bringing this lawsuit in federal court, Schroder is attempting to circumvent the pending arbitration proceeding. Specifically, Teufel posits "that judges must not intervene in pending arbitration to direct arbitrators to resolve an issue one way rather than another." *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.,* 671 F.3d 635, 638 (7th Cir. 2011); *see also Cent. States, Se. & Sw. Areas Pension Fund v. U.S. Foods, Inc.,* 761 F.3d 687, 689 (7th Cir. 2014) ("Once the arbitration is over, the losing side can seek judicial review. Until then matters are in the hands of the arbitrator.") (internal citations omitted).

4

Despite the pending arbitration proceeding, Schroder filed this lawsuit seeking a declaration that the arbitration clause and the JEA were defective in their formation. She argues that the Court must decide her challenge to the arbitration clause's formation based on well-established Supreme Court law. Indeed, "[t]he Supreme Court has said that the responsibility to determine the validity of the contract as a whole is assigned to the arbitrator, while specific challenges to an arbitration clause normally remain with the court." *Janiga v. Questar Capital Corp.,* 615 F.3d 735, 737 (7th Cir. 2010); *see also Wisconsin Local Gov't Prop. Ins. Fund v. Lexington Ins. Co.,* 840 F.3d 411, 414 (7th Cir. 2016) ("Courts, not arbitrators, are charged with deciding 'gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.'") (citation omitted); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.,* 256 F.3d 587, 589 (7th Cir. 2001) ("courts, rather than arbitrators, usually determine whether the parties have agreed to arbitrate"). As the Seventh Circuit teaches, "the existence of a contract is an issue that the courts must decide prior to staying an action and ordering arbitration, unless the parties have committed even that gateway issue to the arbitrators." *Janiga,* 615 F.3d at 738 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72-76 (2010)). In other words, "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (citation omitted); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.") (citation omitted).

<mark>5</mark>

In the present motion, Teufel argues that the parties have "clearly and unmistakably" committed the issue of the arbitration clause's validity to the arbitrator based on the AAA's rules governing their arbitration proceeding. In making this argument, Teufel points to the AAA's letter dated August 3, 2017 that confirmed the parties' agreement to arbitrate this matter and to follow the AAA's Commercial Arbitration Rules for Large Complex Commercial Disputes. Turning to the AAA Arbitration Rules at issue, Section R-7(a) states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with the respect to the existence, scope, or *validity of the arbitration agreement* or to the arbitrability of any claim or counterclaim." (R. 15-4, AAA Rules, at 13.) (emphasis added). In short, under the AAA's rules, the arbitrator determines the question of the validity of the arbitration agreement. *See DeVore Family P'ship LLP v. McDougal Littell*, No. CIV, 06 C 3484, 2006 WL 3393844, at *4 (N.D. Ill. Nov. 22, 2006) ("The AAA's Commercial Arbitration Rules provide that its arbiters have the power to decide jurisdictional issues, including those related to the existence, scope or validity or a purported arbitration agreement.").

Despite Schroder's agreement that the AAA's rules applied in the parties' pending arbitration, she now argues that her "consent to those rules predated her discovery of the defect in the formation of this agreement, and upon discovering that defect, she promptly and timely raised it as a defense in the arbitration and additionally took the step of filing this lawsuit to vindicate her right to have the Court decided her challenge." (Resp. Brief, at 2.) To address Schroder's argument, the Court first turns to R-7(c) of AAA rules which gives context to when a party objects to the jurisdiction of the arbitrator:

> A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

6

As such, under R-7(c), Schroder's objection to the jurisdiction of the arbitrator was timely in the pending arbitration. Nevertheless, pursuant to the rules governing the parties' pending arbitration, the validity of the arbitration agreement is for the arbitrator to decide. *See Wal-Mart Stores, Inc. v. Helferich Patent Licensing,* LLC, 51 F. Supp. 3d 713, 719 (N.D. Ill. 2014).

Moreover, Schroder has failed to provide legal authority supporting her argument that because she did not discover the alleged defect in the formation of the arbitration clause until after she agreed to arbitrate this matter, she can rescind her agreement that the AAA's rules apply – and the Court could find none. Instead, Schroder relies on dicta in the Seventh Circuit's *Sphere Drake* decision. *See In re Repository Techs., Inc.,* 601 F.3d 710, 718 (7th Cir. 2010) (language that was not essential to the outcome of a case is dicta). To clarify, in distinguishing the difference between fraudulent inducement in formation of a contract with the situation in which no contract existed in the first instance, the Seventh Circuit in *Sphere Drake* explained that "an argument that the contract does not exist can't logically be resolved by the arbitrator (unless the parties agree to arbitrate this issue after the dispute arises)." *Sphere Drake Ins.*, 256 F.3d at 591. Schroder focuses on the word "after" in the parenthetical to support her argument that "there is no evidence that Plaintiff agreed to arbitrate her formation challenge after discovering the defects in the Purported Arbitration Agreement on or about August 12, 2017." (Resp. Brief, at 9.) In other words, Schroder argues that because she discovered that RFC did not have the capacity to enter into the JEA and arbitration clause after she agreed to arbitrate, she is somehow absolved of her agreement to arbitrate and follow the AAA's rules. Any such argument is not supported by the dicta she cites in *Sphere Drake*.

Likewise, Plaintiff's reliance on *First Options* for the proposition that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue"

7

is also misplaced. *Id*. at 946. In *First Options*, the Supreme Court concluded that based on the record before it, the petitioner could not show that the respondents clearly agreed to have the arbitrators decide the question of arbitrability. *Id*. In particular, although the respondents' filed a written memorandum to the arbitrators objecting to their jurisdiction, this alone did not establish respondents' willingness to arbitrate. *Id*. Here, it is undisputed that Plaintiff's counsel agreed that the AAA's Commercial Arbitration Rules, including the rules pertaining to Large Complex Commercial disputes, applied to the pending arbitration. Those rules unequivocally state that the "arbitrator shall have the power to rule" on "the validity of the arbitration agreement." There was no such agreement in *First Options* nor were the parties engaged in pending arbitration proceedings during that lawsuit.

In addition, although the parties do not cite legal authority in the context of an agreement to follow the AAA's rules in a pending arbitration, courts in this district have consistently concluded that an arbitration agreement's incorporation of the AAA's rules into the arbitration clause qualifies as a clear and unmistakable expression of the parties' intent to leave the question of the arbitration clause's validity to the arbitrator. *See, e.g., Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.,* 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016); *Cequent Performance Prod., Inc. v. Let's Go Aero, Inc.,* No. 14 C 8457, 2016 WL 4036754, at *6 (N.D. Ill. July 28, 2016); *Wal-Mart Stores,* 51 F. Supp. 3d at 720. Moreover, six circuit courts addressing this issue have also held than an arbitration agreement's incorporation of the AAA's Rules reflects the parties' agreement to have the arbitrator decide questions of arbitrability. *See Petrofac, Inc. v. DynMcDermott Petrol. Ops. Co.,* 687 F.3d 671, 675 (5th Cir. 2012); *Fadal Machining Cents., LLC v. Compumachine, Inc.,* 461 Fed.Appx. 630, 632 (9th Cir. 2011); *Fallo v. High–Tech Inst.,* 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373

(Fed.Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship,* 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.,* 398 F.3d 205, 211 (2d Cir. 2005). As the district court in *Cequent Performance* explained "[g]iven this AAA requirement that the arbitrator decide 'the arbitrability of any claim,' district courts in this circuit (and courts of appeals in other circuits, including the 1st, 2d, 5th, 8th, 9th, 11th, and Federal Circuits) have consistently held that a clause requiring arbitration according to AAA Rules requires the arbitrator to resolve arbitrability disputes." *Id.* at *6.

Under the circumstances and based on this persuasive authority, because the parties agreed that the AAA's rules would govern their pending arbitration proceeding and the rules unequivocally state that the arbitrator has the authority to decide the validity of an arbitration agreement, the parties have "clearly and unmistakably" expressed their intent to arbitrate the validity of the arbitration agreement.

## CONCLUSION

For these reasons, the Court grants Teufel's motion to dismiss for improper venue brought pursuant to Federal Rule of Civil Procedure 12(b)(3). The Court stays this case pending resolution of the arbitration.

**Dated:** November 20, 2017

                                              **ENTERED**

                                              */s/ Amy J. St. Eve*

                                              _____
                                              **AMY J. ST. EVE**
                                              **United States District Judge**